UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES F. SHORT III, | |
| Plaintiff, | No. 16 C 2150 |
| v. | Judge Thomas M. Durkin |
| BRAD S. GRAYSON; SEAN M. NELSON; STRAUSS & MALK, LLP; JOSEPH J. SIPRUT; ALEKSANDRA M.S. VOLD; SIPRUT, P.C.; TED DONNER, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Charles Short alleges that Defendants committed legal malpractice during their representation of him in an underlying lawsuit. R. 32. Based on an arbitration clause in their retainer agreement with Short, three of the defendants—Siprut, P.C.; Joseph Siprut; and Aleksandra Vold (the "Siprut Defendants")—have moved for a stay and an order compelling arbitration of Short's claims against them. R. 37. For the following reasons, that motion is granted.

**Legal Standard**

Motions to compel arbitration are reviewed under a summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The "opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* "[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.*

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).

## Analysis

### I. Public Policy

By not contending otherwise, Short concedes that the three elements mentioned above permitting enforcement of an arbitration clause are present in this case. Short's sole argument against enforcement of the arbitration clause is that it is contrary to Illinois public policy. The Illinois Supreme Court has explained that

> [i]n deciding whether an agreement violates Illinois public policy, [courts] must determine whether the agreement is so capable of producing harm that its enforcement would be contrary to the public interest. It is in the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts.

2

> Consequently, the power to declare a private contract invalid on public policy grounds is exercised sparingly. An agreement will not be invalidated unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy of Illinois, or unless it is manifestly injurious to the public welfare. Those who would invalidate an agreement carry a heavy burden of demonstrating a violation of public policy. Whether an agreement violates public policy depends on the particular facts and circumstances of the case.

*Country Preferred Ins. Co. v. Whitehead*, 979 N.E.2d 35, 42-43 (Ill. 2012) (internal citations omitted).

Short argues that "in Illinois an agreement to arbitrate between an attorney and a client will not be enforceable if it violates public policy as found in the Rules of Professional Conduct" that govern attorneys. R. 63 at 4. Short contends that the Siprut Defendants violated the Rules of Professional Conduct because they did not secure his informed consent to the arbitration clause in the retainer agreement. Specifically, Short references Rule 1.4(b), which provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make an informed decision regarding the representation." Generally, Short argues that the Rules require attorneys to obtain their clients "informed consent" to any "proposed course of conduct." R. 63 at 6. Although not referenced by Short, the Siprut Defendants point out that comment 14 to Rule 1.8 provides that attorneys are not prohibited "from entering into an agreement with the client to arbitrate legal malpractice claims, *provided* such agreements are enforceable and the client is fully informed of the scope and effect of the agreement." (emphasis added). Short argues,

3

and the Siprut Defendants do not appear to dispute, that they did not ensure that Short was "fully informed" regarding the arbitration clause in the retainer agreement. On this basis, Short contends that the arbitration clause is against public policy and invalid.

Short's argument, however, misunderstands the force of the Illinois Rules of Professional Conduct. The Rules impose duties on the manner in which attorneys engage in certain actions, but the Rules do not create "public policy" regarding the kinds of actions that are legally permissible. For example, comment 14 to Rule 1.8 provides that attorneys are permitted to include arbitration clauses in retainer agreements "provided such agreements are enforceable and the client is fully informed of the scope and effect of the agreement." The comment contemplates that "enforceability" of a retainer agreement with an arbitration clause is a separate consideration from whether an attorney fulfilled his or her duty in entering into such an agreement. In other words, the Rules on which Short relies provide that whether a client gives informed consent to an arbitration clause is not relevant to whether that arbitration clause is enforceable. It may be that the Rules can be said to create "public policy" with respect to attorney conduct, but the Rules themselves disavow any authority over the enforceability of agreements. Alleged violation of the responsibility to fully inform a client about an arbitration clause may create an attorney discipline issue, but it does not satisfy Short's "heavy burden" to demonstrate the existence of a public policy bar to such a clause.

Short has not cited any other authority that an attorney retainer agreement violates public policy because it contains an arbitration clause. Indeed, district courts in this circuit and elsewhere have enforced arbitration clauses in attorney-client retainer agreements. *See Davis v. Fenton*, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014); *Olson v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710, 726 (N.D. Ill. 2006); *Conney v. Quarles & Brady, LLP*, 2011 WL 2111757, at *2 (E.D. Wis. May 26, 2011); *see also Bezio v. Draeger*, 737 F.3d 819 (1st Cir. 2013) (arbitration clause in attorney-client retainer agreement did not violate Maine's professional responsibility law for attorneys); *Golden v. O'Melveny & Meyers LLP*, 2016 WL 4168853, at *1 (C.D. Cal. Aug. 3, 2016); *Smith v. Lindemann*, 2014 WL 835254, at *1 (D.N.J. Mar. 4, 2014); *DeMartini v. Johns*, 2012 WL 4808448, at *6 (N.D. Cal. Oct. 9, 2012). Thus, the arbitration clause in Short's retainer agreement with the Siprut Defendants does not violate Illinois public policy.

## II. Procedural Unconscionability

Although he does not use these terms, Short's argument could be construed as claiming that the retainer agreement's arbitration clause is void, or procedurally unconscionable, because he did not understand its force when he signed it. "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1st Dist. 1980). The Illinois Supreme Court has held that "procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff

5

cannot fairly be said to have been aware he was agreeing to it." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (Ill. 2006). In determining whether a contract is procedurally unconscionable, courts should consider "all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.* (quoting *Frank's Maint.*, 408 N.E.2d at 410). While "both the conspicuousness of the clause and the negotiations relating to it are important," they are "not conclusive factors in determining the issue of unconscionability." *Kinkel*, 857 N.E.2d at 264 (quoting *Frank's Maint.*, 408 N.E.2d at 410).

Short could be understood to be arguing that the arbitration clause is procedurally unconscionable because the Siprut Defendants did not explain it to him. But whether the Siprut Defendants explained the arbitration clause to him is irrelevant because Short does not contend that he could not have understood the clause if he had read it himself. Even if Short had alleged that he could not understand the arbitration clause, such an allegation would not be plausible in light of Short's allegations that he is a "visionary businessman," R. 32 ¶ 3, who has shepherded his businesses through multiple legal proceedings. *See* R. 32. And since Short signed the retainer agreement, Short's failure to read and consider the significance of the arbitration clause is not a basis for finding the clause unenforceable. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) ("Ignorance of the contract's arbitration provision is no defense if

6

[the plaintiff] failed to read the contract before signing."); *Davis*, 26 F. Supp. 3d at 738 ("by signing the retainer agreement, [the plaintiff] acknowledged that she read and understood the terms of the agreement including the arbitration clause. Therefore, [the plaintiff's] argument that no one informed her that there was an arbitration clause in the agreement or what that arbitration clause meant is immaterial."); *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 807 (N.D. Ill. 1999) ("[A] party's failure to read a contract does not invalidate unread contractual terms or excuse that party's performance under the contract."). Therefore, Short has failed to raise a basis for finding that the arbitration clause is procedurally unconscionable.

## Conclusion

For the foregoing reasons, the Siprut Defendants' motion to compel arbitration, R. 37, is granted, and the case is stayed pending arbitration. Additionally, the Siprut Defendants' motion to strike, R. 56, is denied. The Siprut Defendants' request for fees and costs is denied because Short's argument in opposition to the motion to compel arbitration is not frivolous.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 9, 2016