CHARLES F. SHORT III,

      Plaintiff,

      v.

BRAD S. GRAYSON; SEAN M. NELSON; STRAUSS & MALK, LLP; JOSEPH J. SIPRUT; ALEKSANDRA M.S. VOLD; SIPRUT, PC; TED DONNER,

      Defendants.

No. 16 C 2150

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Charles Short alleges that Defendants committed legal malpractice during their representations of him in an underlying lawsuit. R. 32. Four of the defendants—Ted Donner, Brad Grayson, Sean Nelson,[1] and Strauss & Malk, LLP— have moved to dismiss Short's claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] R. 40; R. 42. For the following reasons, both motions are granted in part and denied in part.

### Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

---

[1] Defendant Sean Nelson was named in Short's original complaint, but is not named (or even mentioned) in the amended complaint, so the Court grants Nelson's motion to dismiss the claims against him.

[2] The Court previously granted a motion to compel arbitration and stay the case against defendants Joseph Siprut, Aleksandra Vold, and Siprut PC. *See* R. 71.

Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

### I. The Underlying Dispute

Short formed Mobile Information Systems ("MIS") in 1994 with two other shareholders. R. 32 ¶ 31. MIS's principle assets were patents developed by Short (the "Patents"). *Id.* ¶ 32. MIS filed for bankruptcy in 2000. *Id.* ¶ 36.

Short and his two partners from MIS formed Sidewinder Holdings, Ltd. ("Sidewinder") in 2001 with a new investor, defendant Ian Pye. *Id.* ¶ 39. Sidewinder

then purchased the Patents from the MIS bankruptcy estate. *Id.* ¶ 43. Short and Pye managed Sidewinder along with a former MIS employee, George Best, who also eventually became a Sidewinder director. *Id.* ¶¶ 40, 45-46. Pye owned 50% of Sidewinder through his company Meridian. *Id.* ¶ 42. Short owned 34%, and Best and the two other former MIS shareholders collectively owned 16%. *Id.* ¶ 42.

Sidewinder was "largely financed" by a loan from Pye's company Meridian. *Id.* ¶ 48. This loan was refinanced several times, resulting in Pye increasing his ownership stake in Sidewinder and eventually giving him a controlling interest. *Id.* ¶¶ 49, 51. By taking a controlling interest in Sidewinder, Pye was able to push Short out of management and install Anthony Hughes and Rochelle Slater, who were also employees of Meridian, as Sidewinder officers and directors. *Id.* ¶¶ 52-58.

Short alleges that once Pye took control of Sidewinder he began to further encumber it financially while at the same time failing to pursue profitable uses of the Patents or defend them in court. *Id.* ¶¶ 52, 56, 83-86. In 2005, Short and Pye negotiated for a possible sale of the Patents to Short. *Id.* ¶¶ 87-90, 102-06. However, on January 5, 2006, Pye told Short that he could not sell him the Patents because he already had sold them to an "unrelated industry company" in December 2005 for $3 million. *Id.* ¶ 120. Pye refused to identify the company, citing a confidentiality agreement. *Id.* ¶ 121.

Pye told Short that the profits from the sale of the Patents were used to repay the money Sidewinder borrowed from Meridian, and that Sidewinder was essentially worthless. *Id.* ¶ 122. Nevertheless, Pye offered Short $120,000 for the

12% of Sidewinder Short still owned. *Id.* ¶ 123. Short believed the Patents were worth millions of dollars more than what Pye had sold them for, but he "believed that he had no recourse against Pye for what, on its face, appeared to be Pye's bad judgment." *Id.* ¶¶ 125-26. For this reason, Short agreed to sell his Sidewinder shares on January 10, 2006. *Id.* ¶ 127. Later in the Spring of 2006, Short saw a press release stating that a large utility had purchased Sidewinder subsidiaries and their intellectual property, which Short took as confirmation of Pye's earlier representations regarding the sale of the Patents. *Id.* ¶¶ 143-44.

Short alleges, however, that he later learned of facts indicating that Pye lied to him about selling the Patents. Pye's purpose in lying was to fraudulently convince Short to sell his share of Sidewinder. Short alleges that Pye and Best engineered a web of transactions intended to confuse Short about the ownership of the Patents so that they could exclude Short from the Patents' profit potential. Although it is not completely clear why Pye and Best would have chosen the scheme Short describes, Short alleges that the scheme began with Best resigning as a Sidewinder director and executing a $300,000 promissory note in Sidewinder's favor on June 30, 2005. *Id.* ¶¶ 93, 134. Then on July 15, 2005, Best sold his Sidewinder shares to Pye's other company, Meridian, and created a new entity called 4SameDay. *Id.* ¶ 92, 95. By April 21, 2006, Pye and Best had transferred the Patents from Sidewinder to 4SameDay. *Id.* ¶ 145. Shortly thereafter, 4SameDay assigned the Patents to another company called Acacia (in which Pye and Best are not alleged to have had any ownership interest), under terms providing that

4SameDay continued to own a 15% share in the licensing profits of the Patents. *Id.* ¶¶ 145-46, 153. Acacia has successfully pursued settlements regarding use of the Patents with at least 34 large corporations. *Id.* ¶ 154.

Short alleges that he only learned about these alleged facts regarding the sale of the Patents to 4SameDay and Acacia when he was contacted by a representative of Acacia in late May or early June 2007. *Id.* ¶ 149. Short alleges that the Acacia representative told him that Acacia had reviewed the ownership history of the Patents, and based on that review was "concerned that Short's claims against good title in [the Patents] could impact whether Acacia had good title," apparently implying that Acacia was concerned with the circumstances under which Short sold his shares of Sidewinder. *Id.* ¶¶ 149, 156. Short also alleges that he confirmed these facts on a phone call with Best in August 2007. *Id.* ¶ 160.

## II.     The Underlying Litigation

Even though Short alleges that he learned about the alleged scheme as early as May 2007, Short did not pursue legal action until 2010. In August 2010, Short began communicating with defendant attorney Ted Donner about the Sidewinder matter. *Id.* ¶ 249. Short retained Donner on October 15, 2010. *Id.* ¶ 250. On December 30, 2010, Donner filed a complaint on Short's behalf in the Circuit Court of Lake County, making the following claims: (1) fraud against Pye and Best; (2) breach of fiduciary duty against Pye and Best; (3) unjust enrichment against Pye, Best, 4SameDay and one of its successors, two of Sidewinder's successors, and

Meridian. *Id.* ¶¶ 251-52.[3] The complaint was dismissed without prejudice on October 14, 2011. *Id.* ¶ 254.

On December 2, 2011, Donner filed a first amended complaint, including all the claims of the original complaint, and adding a claim against Acacia for aiding and abetting a conspiracy to commit fraud. *Id.* ¶ 256. Donner also filed a second amended complaint on April 9, 2012, which did not add or subtract any claims. *Id.* ¶¶ 259-60. Donner withdrew from representing Short on June 7, 2011. *Id.* ¶ 269.

Short alleges that Donner's representation of him was negligent for the following reasons:

- Donner failed to file direct claims against Sidewinder officers and directors, Hughes, and Slater, for their failure to object to Pye and Best's scheme;

- Donner failed to file shareholder derivative claims against Pye, Best, Hughes, and Slater;

- Donner failed to uncover Acacia's participation in the conspiracy to defraud Short, "and only asserted claims of aiding and abetting the conspiracy against Acacia";

- Donner failed to include material facts in the complaints he filed, "including but not limited to the facts that on January 5, 2006, Pye told Short a 'confidentiality agreement' prevented further disclosure related to the fabricated December 2005 sale of [Sidewinder] assets";

- "Donner did not include all of the necessary parties, including but not limited to Circle4, Merex, the Meridian Group, and the Meridian Group Entities"; and

- "Donner incorrectly argued Illinois law applied to Short's breach of fiduciary claims."

*Id.* ¶¶ 261-68.

---

[3] The complaint also sought a constructive trust, an accounting, and discovery. R. 32 ¶¶ 251-52.

After Donner withdrew, Short retained Siprut P.C. on June 17, 2012. *Id.* ¶ 272. On July 13, 2012, the state court granted Short leave to file a third amended complaint, and entered an order acknowledging that Short had voluntarily dismissed without prejudice the claims against Acacia. *Id.* ¶¶ 286-87. On September 12, 2012, Siprut filed a third amended complaint with Pye and Best as the only defendants, making the following claims: (1) breach of fiduciary duty; (2) fraudulent inducement; (3) fraudulent misrepresentation; (4) conspiracy to commit fraud; and (5) unjust enrichment. *Id.* ¶¶ 289, 300. On March 8, 2013, the state court dismissed the breach of fiduciary duty, conspiracy to commit fraud, and unjust enrichment claims against Best with prejudice, and the fraudulent inducement and fraudulent misrepresentation claims against Pye without prejudice. *Id.* ¶¶ 302-03. Siprut withdrew sometime after March 26, 2013. *Id.* ¶ 307.[4]

On April 10, 2013, Short retained Brad Grayson of Strauss & Malk LLP (collectively "Strauss"). *Id.* ¶ 309. On May 1, 2013, Strauss filed a fourth amended complaint making the following claims: (1) rescission of Short's sale of his interest in Sidewinder based on fraud; (2) a shareholder derivative claim for breach of fiduciary duty; and (3) minority shareholder oppression. *Id.* ¶¶ 312-13. The defendants in the fourth amended complaint were Pye, Best, Meridian, and 4SameDay. *Id.* ¶ 312. On October 4, 2013, the state court dismissed all of Short's claims with prejudice. *Id.* ¶ 321.

---

[4] This Court granted a motion to compel arbitration of Short's claims against the Siprut defendants on December 9, 2016. *See* R. 71.

Short alleges that Strauss's representation was deficient for the following reasons:

- Strauss failed to file derivative or direct claims against Hughes and Slater;

- Strauss never revived claims against Acacia;

- Strauss failed to file claims against "other necessary parties, including but not limited to Best Outdoors, Circle4, Merex, [and Meridian]";

- Strauss failed to revive claims for fraudulent misrepresentation and fraudulent inducement against Pye;

- Strauss failed to advise Short that he had claims against prior attorneys for legal malpractice; and

- Strauss failed to adequately plead Short's claims such that Short had to defend against a motion for sanctions.

*Id.* ¶¶ 314-20, 358.

## Analysis

"The basis of a legal malpractice claim is that, absent the former attorney's negligence, the plaintiff would have been compensated for an injury caused by a third party." *Stevens v. McGuireWoods LLP*, 43 N.E.3d 923, 927 (Ill. 2015). "To prevail on such a claim, a plaintiff must plead and prove that (1) the defendant attorneys owed the plaintiff a duty of due care arising from the attorney-client relationship; (2) the defendants breached that duty; and (3) as a direct and proximate result of that breach, the plaintiff suffered injury." *Id.* "To satisfy the element of proximate cause, the plaintiff must plead sufficient facts to establish that 'but for' the negligence of the attorney, the plaintiff would not have suffered actual damages." *In re Estate of Powell*, 12 N.E.3d 14, 22 (Ill. 2014). "Because legal

malpractice claims must be predicated upon an unfavorable result in the underlying suit, no malpractice exists unless counsel's negligence has resulted in the loss of the underlying action." *Ignarski v. Norbut*, 648 N.E.2d 285, 288 (Ill. 1995); *see also Nelson v. Quarles and Brady, LLP*, 997 N.E.2d 872, 880 (Ill. App. Ct. 1st Dist. 2013) ("A legal malpractice suit is by its nature dependent upon a predicate lawsuit. Thus, a legal malpractice claim presents a 'case within a case.'" (internal citation omitted)). "Plaintiff is required to establish that but for the negligence of counsel, he would have successfully prosecuted or defended against the claim in the underlying suit." *Ignarski*, 648 N.E.2d at 288. "Damages will not be presumed, and the client bears the burden of proving he suffered a loss as a result of the attorney's alleged negligence." *Id.* Additionally, "in assessing the damage inflicted by legal malpractice, prime consideration must be given to the situation in which the client was placed at the time of the termination of the legal services." *Mitchell v. Schain, Fursel & Burney, Ltd.*, 773 N.E.2d 1192, 1194 (Ill. App. Ct. 1st Dist. 2002) (citing *Schulte v. Burch,* 502 N.E.2d 856, 858 (Ill. 1986)). If a "cause of action was viable at the time of [an attorney's] discharge[,] [i]t therefore follows that [a] plaintiff can prove no set of facts which connect [the attorney's] conduct with any damage sustained by plaintiff." *Mitchell*, 773 N.E.2d at 1194 (citing cases).

## I.     Failure to Bring Derivative Claims

Donner and Strauss argue that Short's claim that they committed malpractice by failing to bring derivative claims should be dismissed because derivative actions can only be brought by current shareholders. *See Ark. Teacher*

*Retirement Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888, 897 (Del. 2013).[5] Short admits, of course, that he sold his shares in Sidewinder prior to initiating the underlying litigation, but he argues his claim is saved because Delaware law recognizes a fraud exception to the "continuous ownership" requirement. *See id.* at 894 ("continuous ownership" requires that "the plaintiff . . . maintain shareholder status throughout the litigation"). This exception, however, does not apply to the other requirement for a derivative action, namely the "*contemporaneous* ownership" requirement. *Id.* (emphasis added). Under this requirement, in order to maintain a derivative action on behalf of a corporation, the plaintiff must be a shareholder "at the time of commencement of suit." *Id.* The fraud exception does not apply to this rule. In fact, Delaware courts have held that the proper cause of action is a direct claim against those who fraudulently deprived the plaintiff of his stock, and by extension his standing to bring a derivative claim. *See Postorivo v. AG Paintball Holdings, Inc.*, 2008 WL 553205, at *10 (Del. Ch. Feb. 29, 2008) ("As merely a former stockholder, [the plaintiff] presumptively lacks standing to be a derivative plaintiff. If he believes [the defendant's] board wrongly deprived him of his shares, he may assert direct claims to right the alleged wrong . . . ."); *Cede & Co. v. Technicolor, Inc.,* 542 A.2d 1182, 1188 (Del. 1988) ("As the Trial Court recognized, procedural requirements of standing developed to control derivative actions have no

---

[5] Delaware law would govern any derivative claim Short had because Sidewinder was a Delaware corporation. *See CDX Liquidating Trust v. Venrock Assocs*, 640 F.3d 209, 212 (7th Cir. 2011) ("Illinois choice of law principles, which govern this case because it was filed in Illinois, make[] the law applicable to a [derivative] suit against a director for breach of fiduciary duty that of the state of incorporation.").

relevance to individual shareholder suits claiming a private wrong. Standing to pursue a derivative claim for injury to the corporate entity should not be confused with the right of a former shareholder claimant to assert a timely filed private cause of action premised upon a claim of unfair dealing, illegality, or fraud. No one would assert that a former owner suing for loss of property through deception or fraud has lost standing to right the wrong that arguably caused the owner to relinquish ownership or possession of the property."). Short has not cited, and the Court is not aware of, any relevant exception to the "contemporaneous ownership" rule.[6] Therefore, since he already had sold his shares in Sidewinder, Short did not have standing to bring any derivative claims on behalf of Sidewinder, regardless of the merit of his fraud allegations. And since Short did not have any viable derivative claims in the underlying state court litigation, his claims in this Court that Donner and Strauss committed malpractice for failing to bring any such claims fail as a matter of law and must dismissed.

## II. Failure to Bring Direct Claims against Hughes and Slater

### A. On the Merits

Strauss argues that "Short does not allege facts from which it can be concluded . . . that he had a viable cause of action against Hughes and Slater." R. 43-1 at 8. Strauss argues that Short's allegations that Hughes and Slater approved sale of the Patents "without properly assessing the value and/or by approving the

---

[6] An exception to the "contemporaneous ownership" requirement exists that may allow shareholders to file suit for wrongs to the corporation that occurred before the shareholders bought their shares. *See Blasband v. Rales*, 971 F.2d 1034, 1045-46 (3d Cir. 1992) (citing cases). But such a circumstance is not at issue here.

sale for inadequate consideration. . . . do not show the existence of a direct claim by Short against Hughes or Slater." *Id.*

It is true that under Illinois law an injury done to the assets of a corporation by the negligence or malfeasance of its officers or directors is an injury done to the corporation, and must be brought as a derivative claim. *See Cashman v. Coopers & Lybrand*, 623 N.E.2d 907, 911 (Ill. 1993) ("the cause of action belonged to the corporation" when "[t]he real damage suffered by plaintiffs . . . is that [the corporation's] stock becomes worthless due to [the officers'] alleged mistakes"); *Seinfeld v. Bays*, 595 N.E.2d 69, 77 (Ill. 1992)) ("Claims of devaluation of stock and of corporate waste are claims which accrue to the corporation rather than to individual shareholders.").[7] So Short's allegation that Hughes and Slater breached

---

[7] The parties do not dispute that Illinois law applies to any direct claims Short may have had, so the Court "need not investigate whether another forum's law would be more appropriate." *McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998) (citing *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.")). The Court notes, however, that Short's allegations appear to state claims under Delaware law as well (Delaware being the state of Sidewinder's incorporation). *See In re SemCrude L.P.*, 796 F.3d 310, 318 (3d Cir. 2015) ("It is well settled [under Delaware law] that an injury done to the stock and capital of a corporation by the negligence or misfeasance of its officers and directors is an injury done to the whole body of stockholders in common, and not an injury for which a single stockholder can sue."); *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1139, n. 66 (Del. 2016) ("Since the fiduciary duty of officers and directors runs to the corporation and the shareholder, the shareholder will always be able to assert a breach of duty owed to it, but plainly not all fiduciary duty claims are individual claims. As such, in the context of fiduciary duty claims, the focus should be on the nature of the injury.); *Cavi v. Evolving Sys., Inc.*, 2017 WL 658470, at *6 (D. Del. Feb. 17, 2017) ("Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for

their duty "to sell [the Patents] for the most money possible. . . . [and to] determine if there was a market for [the Patents]," R. 32 ¶ 246, by itself, may be insufficient to state a direct claim against Hughes and Short. However, Sidewinder was a close corporation, and "[s]hareholders in a close corporation owe to each other fiduciary duties similar to those of partners in a partnership." *Anest v. Sudino*, 773 N.E.2d 202, 209 (Ill. App. Ct. July 12, 2002). The Court has not found an Illinois case holding that a claim against officers or directors of a close corporation for corporate waste can be brought directly, as opposed to derivatively. But Short also alleges that Hughes and Slater "had a duty to speak after closely held [Sidewinder] sold assets to an insider without a proper valuation or disclosure." R. 32 ¶ 293. The Illinois Supreme Court has held that shareholders or directors in a close corporation may have a duty to speak to the other shareholders. *See Illinois Rockford Corp. v. Kulp*, 242 N.E.2d 228, 233 (Ill. 1968) ("Their decision to form and operate as a corporation rather than a partnership does not change the fact that they were embarking on a joint enterprise, and their mutual obligations were similar to those of partners. . . . We hold that [the defendant shareholder] stood in a fiduciary relationship to [the plaintiff shareholder], that he failed to deal openly and honestly with [the plaintiff], and that, in fact his conduct was fraudulent."); *see also Hassan v. Yusuf*, 944 N.E.2d 895, 912 (Ill. App. Ct. 1st Dist. 2011) ("a fiduciary duty exists between shareholders of a closely held corporation . . . . [and] fraud by the intentional concealment of a material facts [may be shown by] the existence of a

shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty." (quoting *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)).

special of fiduciary relationship, which would raise a duty to speak"). Thus, Short's allegation that Hughes and Slater failed to inform him regarding the ownership status of the Patents plausibly demonstrates that they are liable for the injury Short suffered when he sold his shares in Sidewinder without the benefit of that information. Neither Strauss nor Donner have addressed this authority regarding fiduciary duties in the context of close corporations. Therefore, the Court will not dismiss the claims against Strauss and Donner for a failure to file claims against Hughes and Slater based on the argument that Short has failed to state a viable claim against them. *See Wehrs v. Wells*, 688 F.3d 886, 891 n. 2 (7th Cir. 2012) ("[t]he Court will not address this undeveloped argument lacking legal authority"); *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) ("it is not this court's responsibility to research and construct the parties' arguments").

## B. Timeliness

However, Donner and Strauss also both argue that they are not liable for a failure to file direct claims against Hughes and Slater because Illinois's five-year statute of limitations for such claims expired during the period of time Short was represented by Siprut.[8] The Court addresses each of their arguments in turn.

---

[8] As mentioned, the parties do not dispute the applicability of Illinois law to any direct claims Short may have against Hughes and Slater. However, the Court notes that if Delaware law applied, Short's claims against Hughes and Slater may have expired before Short engaged Donner. *See In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007) ("A three-year statute of limitations applies to breaches of fiduciary duty (citing 10 Del. C. § 8106)).

### 1. Donner

Short alleges that he first became aware of the facts underlying Pye and Best's alleged fraudulent scheme—including the roles of Hughes and Slater as Sidewinder directors—when he was contacted by a representative of Acacia in late May or early June 2007. *Id.* ¶¶ 149, 156. He also alleges that he confirmed these facts in a conversation with Best in August 2007. *Id.* ¶¶ 160-61. In the meantime, Donner withdrew from representing Short on June 7, 2012. *Id.* ¶ 269. As Donner notes, a breach of fiduciary duty claim under Illinois law accrues when the "plaintiff knows or reasonably should have known that he has been injured and that his injury was wrongfully caused." *Golla v. General Motors Corp.*, 657 N.E.2d 894, 898 (Ill. 1995). Additionally, although this "question may be determined as a matter of law . . . when the answer is clear from the pleadings," it is "generally resolved as a question of fact." *Clay v. Kuhl*, 727 N.E.2d 217, 221 (Ill. 2000).

Short's allegations indicate that he knew about the facts that would have supported claims against Hughes and Slater as early as May 2007. This would mean that the statute of limitations expired in May 2012, shortly before Donner withdrew. True, as Donner argues, Short's allegations leave open the possibility that he did not receive complete knowledge of the relevant facts until he spoke to Best in August 2007, which could mean that the statute of limitations did not expire until August 2012 after Donner was no longer representing Short. Nonetheless, it is at least plausible that Short knew he had claims against Hughes and Slater in May 2007. And since Donner did not withdraw his representation of Short until June 7,

2007, it is plausible that Donner retained responsibility for bringing claims against Hughes and Slater and could be liable for malpractice for his failure to do so. Thus, at this stage of the proceedings, the Court will not dismiss Short's claim that Donner is liable for failing to bring direct claims against Hughes and Slater as untimely.

### 2. Strauss

Even though Short agrees that the statute of limitations for his claims against Hughes and Slater expired no later than August 2012, Short argues that Strauss could have filed these claims, despite the fact that Strauss did not begin representing Short until April 10, 2013, because the claims would have related back to Short's original state court complaint. Under Illinois law, a newly asserted claim "against a person not originally named" relates back to a timely filed complaint if the new defendant "received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her." 735 ILCS 5/2-616(d). In light of the United States Supreme Court's decision in *Krupski v. Costa Crociere*, Illinois courts have held that the application of relation-back "focuses on what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Zlate v. Millette*, 43 N.E.3d 153, 158 (Ill. App. Ct. 1st Dist. 2015) (quoting 560 U.S. 538, 554 (2010), and citing Illinois cases).

Although Short invokes the relation back doctrine, he does not explain why it would have applied to his claims against Hughes and Slater. *See* R. 67 at 5. Specifically, as Strauss points out, Short fails to explain how Strauss could have argued that Hughes and Slater should have known that Short's failure to bring claims against them was due to a "mistake" concerning their "identities," as is required by § 616(d). Even assuming that Hughes and Slater had notice of the three complaints Short filed within the statute of limitations period against Pye and Best (which is a reasonable inference from Short's allegations that Hughes and Slater were closely connected to Pye's businesses) there is nothing about their relationship to Pye and Best and their alleged fraud that would cause Hughes or Slater to think that mistaken identity was the reason Short did not include them as defendants in the original complaint. Illinois courts since *Krupski* that have applied § 616(d) to permit relation back for claims against new defendants have done so where the new defendants were also liable for the injury the plaintiff alleged against the old defendant. *See Zlate*, 43 N.E.3d at 158 (plaintiff intended to sue the person who hit him with a brick, but initially and mistakenly sued the brick-thrower's friend, who had informed the brick-thrower about the lawsuit); *Maggi v. RAS Dev., Inc.*, 949 N.E.2d 731, 736 (Ill. App. Ct. 1st Dist. 2011) (plaintiff intended to sue a subcontractor when he sued the general contractor); *Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 962 N.E.2d 29, 32 (Ill. App. Ct. 2d Dist. 2011) (plaintiff alleged that her employer and "unknown persons" illegally accessed her personal email account, but later learned that two specific individuals were

responsible for the eavesdropping). Unlike these cases, Short does not allege that Hughes and Slater (the new defendants) were involved in the fraudulent scheme allegedly implemented by Pye and Best (the old defendants). Instead, Short alleges that he was injured by Hughes's and Slater's failure to inform him regarding Sidewinder's ownership of the Patents, which, although related to the alleged fraudulent scheme, is not alleged to have been a part of the fraudulent scheme. There is nothing about the fraud allegations Short has made against Pye and Best that necessarily demonstrated that he also intended to sue Hughes and Slater for breach of fiduciary duty. Thus, Strauss's failure to file claims against Hughes and Slater on a relation-back theory did not injure Short and the claims against Strauss on this basis are dismissed.

## III.    Failure to Bring Claims against Acacia

### A.    Donner

Short alleges that Donner committed malpractice because he "[f]ailed to bring a direct action for fraud and conspiracy to commit fraud against Acacia and failed to conduct a reasonable investigation to uncover Acacia's active role in the conspiracy to defraud Short." R. 32 ¶ 339c. But as of June 7, 2007, the date Donner withdrew his representation of Short, the operative complaint included a claim against Acacia for conspiracy to commit fraud. *Id.* ¶ 260. Thus, Donner cannot be liable for malpractice for failing to file a claim for conspiracy to commit fraud.

Donner argues that he is also not liable for his failure to file a fraud claim against Acacia because "the inclusion of [the conspiracy] claim in the Second

Amended Complaint would have provided a basis for the filing of an amended pleading by successor counsel containing additional claims against Acacia." R. 40 at 5. The problem with this argument is that Short did not have an "absolute right" to amend his complaint after Donner withdrew his representation, but rather he was dependent upon the state court's discretion to grant leave to amend the complaint. *Nelson v. Quarles & Brady, LLP*, 997 N.E.2d 872, 893 (Ill. App. Ct. 2013). And the more time that passed without Short seeking an amendment, the less likely the state court would be to grant such leave. For this reason, it is not "certain" that any successor counsel would have been able to amend the complaint to add claims against Acacia, thereby cutting off Strauss's liability. *Id.* ("[T]he other cases cited by defendant are distinguishable because there was no uncertainty as to whether plaintiff's successor counsel would have been permitted to pursue the claim lost by the initial counsel's negligence."). A similar argument was accepted by the court in *Catalina London, Ltd. v. Johnson & Bell, Ltd.*:

> This Court is unable to discern from the record whether Judge Novak, in her discretion, may have allowed an amended complaint in November 2009 when Attorney Novak took over the case. There is evidence from her later ruling in July 2010 where she stated rescission was procedurally forfeited. Attorney Novak certainly believed it was still viable as he repeatedly sought to raise the issue. Accordingly, this Court finds that a factual issue remains as to whether J & B forfeited rescission by failing to raise it before close of discovery and dispositive motions or whether rescission remained viable as a claim when Novak substituted as counsel.

2014 WL 4724380, at *5 (N.D. Ill. Sept. 23, 2014). Therefore, the Court will not dismiss Short's claim against Donner for failure to bring an additional fraud claim against Acacia.

## B.     Strauss

Strauss makes the same argument as Donner to excuse his failure to revive claims against Acacia. It fails for the same reasons already explained. Therefore, the Court will not dismiss Short's claim against Strauss for failure to revive a claim against Acacia.[9]

## IV.     Failure to Amend to Bring Fraud Claims against Pye

Prior to Strauss's representation of Short, the state court dismissed Short's fraudulent misrepresentation and fraudulent inducement claims against Pye without prejudice. Short argues that Strauss was negligent in not reviving those claims. Strauss argues that Short's allegations demonstrate that his reliance on Pye's allegedly false statement that Sidewinder had sold the Patents was unreasonable, such that Short did not have viable fraud claims for Strauss to file.

---

[9] Short argues that Strauss's liability is more clear cut contending that under 735 ILCS 5/13-217 he had only one year to refile the claims against Acacia that Siprut had voluntarily dismissed on July 13, 2012, and that this time period expired during Strauss's representation of him. Section 13-217, however, governs the *refiling* of causes of action, not the relation back of *amendments* to a currently pending pleading, which is governed by 735 ILCS 5/2-616. *See Mabry v. Boler*, 972 N.E.2d 716, 722 (Ill. App. Ct. 1st Dist. 2012) ("[W]e find that the 2010 complaint was not an amended pleading to the 2008 lawsuit and, thus, was not subject to the provisions of section 2–616(b). Rather, the 2010 complaint was a refiled cause of action under section 13–217 of the Code."). Thus, the one-year period provided by § 13-217 is irrelevant here.

Both fraudulent misrepresentation and fraudulent inducement require a showing that the plaintiff reasonably or justifiably relied on the defendant's false statement. *See Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 973 N.E.2d 880, 889 (Ill. 2012); *Martom Partners v. U.S. Bank, N.A.*, 2015 WL 5604683, at *3 (Ill. App. Ct. Sept. 23, 2015). "Generally, the question of whether a plaintiff's reliance was reasonable is a question of fact; however, where only one conclusion can be drawn from the undisputed facts, the question becomes one for the court to determine." *Pastry Partners, Inc. v. Greenswag*, 2016 WL 7422749, at *12 (Ill. App. Ct. Dec. 22, 2016). "In determining whether reliance was justifiable, all of the facts which the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account." *Siegel Dev., LLC v. Peak Const. LLC*, 993 N.E.2d 1041, 1060 (Ill. App. Ct. 1st Dist. 2013). "[A] person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another.'" *Id.* However, "Illinois law has long held that, where the representation is made as to a fact actually or presumptively within the speaker's knowledge, and contains nothing so improbable as to cause doubt of its truth, the hearer may rely upon it without investigation even though the means of investigation were within the reach of the injured party and the parties occupied adversary positions toward one another.'" *Siegel*, 993 N.E. 2d at 1060-61. "[T]he crucial question is whether the plaintiff's conduct was so unreasonable under the circumstances and in light of the information open to him,

that the law may properly say that this loss is his own responsibility." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

Strauss recites the following allegations from Short's complaint, which Strauss argues should have caused Short to distrust Pye's assertion that Sidewinder had sold the Patents:

- "On July 22, 2002, Pye told Short he would have to resign as SHL Director, Chairman and CEO. (¶63). The following month, Pye changed his mind and allowed Short to continue in those roles. (¶65)."

- "By December of 2002, Pye gained control of SHL through Meridian. Upon gaining control, Pye refused to follow Short's advice to exploit the value of the Patent Portfolio, thereby assuring SHL's dependence on Meridian for capital. (¶¶51-52)."

- "In June of 2003, Electra agreed to buyout Meridian's position in SHL for $11 million. One month later, Pye killed the deal by conditioning it on Short resigning as an officer and director of SHL and selling his interest in SHL to Meridian for $100,000. By Short's own allegation, he recognized that the price proposed for Short's shares represented a total valuation of SHL at only $666,666, far lower than the $11 million Electra agreed to pay for 75% of SHL. (¶¶69-70)."

- "On December 12, 2003, Pye informed Short that he was being fired as of January 1, 2004. (¶75). Six days later, Pye changed his mind and told Short he would remain employed with SHL. (¶77). However, five days after that, Pye changed his mind again and reinstated Short's termination. (¶80)."

- "In April of 2005, with Short's interest in SHL reduced to 12%, Pye offered to by Short's interest for $120,000 and agreed to "top up" his offer by giving Short the Patent Portfolio. (¶88). Short confirmed his agreement to the sale in writing. (¶89). However, despite having reached an agreement, Pye emailed Short on May 9, 2005, retracting

22

the offer to give Short the Patent Portfolio as part of the deal. (¶90)"

- "In October of 2005, Short gave Pye a letter of intent to purchase the Patent Portfolio for $3.5 million. (¶105) Short presented Pye with a letter of intent and Pye verbally agreed to its terms. (*Id.*) Then, on January 5, 2006, Pye told Short that he would not proceed with Short's purchase because he already sold the Patent Portfolio to an "unrelated industry company" for $3 million ($500,000 less than Short was offering) in December of 2005. (¶120) Pye refused to provide Short with the identity of the purchaser. (¶121)"

- "Pye told Short that SHL was "worthless" yet offered to buy Short's 12% stake in SHL for $120,000. (Doc. 1, ¶123)"

R. 43-1 at 16-17. Certainly, these are all facts that might make a reasonable person question Pye's future assertions. On the other hand, Pye, as the majority and controlling shareholder and CEO of Sidewinder had "actual or presumptive" knowledge of whether Sidewinder continued to own the Patents. And while the allegations cited above appear to demonstrate that Pye was interested in asserting control of Sidewinder and minimizing or eliminating Short's participation in the company, none of the allegations are clearly instances where it would have been obvious to Short that Pye's statements were untruthful on their face. Even if they were, that would not be a reason to grant Strauss's motion. As the Illinois Appellate Court held in *Sims v. Tezak*,

> This court is reluctant to pronounce a broad rule of law whereby parties, accused of myriad types of fraud and dishonestly, are set loose to live up to the allegations leveled against them . . . . "[T]he fraud-feasor will not be heard to say that he is a person unworthy of belief, and

> that plaintiff was negligent in trusting him, and was
> cheated through his own credulity."

694 N.E.2d 1015, 1020-21 (Ill. App. Ct. 1st Dist. 1998) (quoting *Pattiz v. Semple*, 12

F.2d 276, 278 (E.D. Ill. 1926)). For these reasons, the Court cannot say that Short's

reliance was unreasonable as a matter of law. Therefore, the Court will not dismiss

Short's claim that Strauss's failure to file a fraud claim against Pye was negligent.

## IV.    Claims based on Motion for Sanctions

Short alleges that both Donner and Strauss are liable for the expenses he

incurred in defending against an award of sanctions. Short alleges that the state

court sanctioned him on February 14, 2014 (after all Defendants had already

withdrawn), R. 32 ¶ 324, because his complaints "were not well grounded in facts

because"

- ▪ "Short alleged facts in subsequent complaints that contradicted facts alleged in prior complaints";

- ▪ "Short ignored or failed to allege facts in subsequent complaints pled in prior complaints that negated his cause of action in an attempt to state a cause of action";

- ▪ "Short sought to state causes of action for which he lacked standing or that were barred by the statute of limitations without any basis in law or fact to pursue these claims"; and

- ▪ "Short [failed] to conduct a reasonable inquiry to determine whether the causes of action Short sought to alleged were well grounded in fact or law."

*Id.* ¶ 325. Short asked the state court to reconsider the sanctions order and the

court held an evidentiary hearing at which Short testified. Short alleges that the

state court found credible his testimony that he told his attorneys about certain

material facts—including that "on January 5, 2006, Pye told Short that there was a confidentiality agreement that prevented disclosure of material facts related to the fictitious sale of [Sidewinder] assets"—which were not included in the complaints. *Id.* ¶¶ 327-29. Short alleges that on this basis the state court dismissed the sanctions finding that "Short relied on [his attorneys] to develop the various complaints and the legal strategies behind them." *Id.* ¶ 329.

Short's account of the state court's decision plausibly places liability for the costs Short incurred defending the sanctions order on his former attorneys who drafted the complaints that raised the state court's suspicions. Donner and Strauss, however, argue that Short has failed to plausibly allege that either one of them in particular are responsible for the deficiencies noted by the state court. Presumably, Donner and Strauss mean to contend that Short is required to allege how the various iterations of his complaint contradicted each other, and to place particular blame for these contradictions on one of the three groups of defendants (i.e., Donner, Siprut, and/or Strauss). But clearly, Short believes that *all* of the defendants bear some responsibility for the alleged errors in his complaints. Furthermore, the state court's sanctions orders presumably are public records, and Defendants will be able to review those records and argue on summary judgment whether they bear responsibility for the deficiencies the state court perceived. Short's current allegations are sufficient to plausibly allege that Donner and/or Strauss were responsible for the sanctionable deficiencies in Short's state court complaints, and

to put Donner and Strauss on notice of Short's claims. Thus, the Court will not dismiss these claims against Donner and Strauss at this stage of the proceedings.[10]

## V.    Other Claims

Short's claims that Donner and Strauss failed to advise him regarding the applicable statute of limitations rise and fall with his claims that they failed to bring certain substantive claims. In other words, if Donner or Strauss is liable for failing to bring a claim which expired during their respective representations of Short, then they are liable for failing to advise him of the applicable statute of limitations. If a claim was still viable after their respective representations ended, they cannot be said to have had a duty to advise him further of the applicable statute of limitations.

Short also claims that Strauss should have advised him that he had claims for malpractice against Donner and Siprut. But Short is currently pursuing those claims in this Court. So to the extent Strauss had a duty to advise Short regarding potential malpractice claims and failed to fulfill that duty, Short has not been prejudiced. Furthermore, Short does not allege that he lost the ability to bring additional malpractice claims due to Strauss's alleged failure. Thus, this claim against Strauss is dismissed.

Further, Short's claims that Donner and Strauss "[f]ailed to do a reasonable investigation as to what law applied to the breach of fiduciary duties of directors and officers of a Delaware corporation," are insufficiently pled. Short has not alleged

---

[10] This reasoning also applies to Short's claims that Donner and Strauss "[f]ailed to include all material facts" in Short's complaints.

that Donner's or Strauss's mistakes as to applicable law caused any of his claims to be dismissed. As explained in the conclusion of this opinion, Short has leave to make such an allegation with reference to the state court's rulings if he can do so in compliance with Federal Rule of Civil Procedure 11.

Additionally, Short's claims that Donner and Strauss each failed to "include all of the necessary parties" is insufficiently pled. If there are other individuals or entities Short believes should have been sued beyond those specifically cited in his complaint, he should say so in well-pleaded allegations explaining how he had plausible claims against those entities that his attorneys failed to pursue. He has failed to do so in the current complaint with respect to any of the entities beyond those already addressed in this opinion.

## Conclusion

For the foregoing reasons, Donner's motion, R. 40, is granted with respect to the following claims:

- Donner's failure to file a derivative claim;
- Donner's failure to advise regarding the applicable statutes of limitations;
- Donner's failure to apply the correct applicable law; and
- Donner's failure to include necessary parties.

Those four claims are dismissed without prejudice. Donner's motion, R. 40, is denied with respect to the following claims:

- Donner's failure to file direct claims against Hughes and Slater;
- Donner's failure to file a fraud claim against Acacia; and

- Donner's responsibility for sanction costs.

Those three claims remain in the case. Further, Strauss's motion, R. 42, is granted with respect to the following claims:

- Strauss's failure to file a derivative claim;

- Strauss's failure to file direct claims against Hughes and Slater;

- Strauss's failure to advise regarding the applicable statutes of limitations;

- Strauss's failure to advise regarding potential malpractice claims;

- Strauss's failure to apply the correct applicable law; and

- Strauss's failure to include necessary parties.

Those six claims are dismissed without prejudice.[11] Strauss's motion, R. 42, is denied with respect to the following claims:

- Strauss's failure to seek to amend the complaint to include claims against Acacia;

- Strauss's failure to seek to amend the complaint to include claims against Pye; and

- Strauss's responsibility for sanction costs.

Those three claims remain. Lastly, Short's claims against Nelson are also dismissed without prejudice.

Should Short believe he can cure the deficiencies the Court has described in this opinion with respect to the dismissed claims, he may file a motion for leave to file a second amended complaint by April 20, 2017. The motion should attach a

---

[11] Short also claims that Strauss "failed to reallege all previous versions of the complaint, making prior claims unreviewable on appeal." R. 32 ¶ 358. But Short does not allege that he actually took and appeal and he does not address this claim in his brief. Thus, it is dismissed.

proposed second amended complaint and be supported by a brief of no more than five pages describing how the proposed amended complaint cures the deficiencies in the current complaint. Should Short choose to file such a motion, Donner and Strauss should not respond unless the Court so orders. A status hearing is set for April 6, 2017, at which Short should be prepared to report whether he intends to file a second amended complaint, and if not, how the parties would like to proceed.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  March 14, 2017